**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ELTON ANDERSON,<br><br>　　　　　　Plaintiff,<br><br>　　　v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of the Social<br>Security Administration,<br><br>　　　　　　Defendant. | NO. CV 07-00708 SS<br><br>**MEMORANDUM DECISION AND ORDER** |

**INTRODUCTION**

Elton Anderson ("Plaintiff") brings this action seeking to overturn the decision of the Commissioner of the Social Security Administration (hereinafter the "Commissioner" or the "Agency") denying his application for Supplemental Security Income ("SSI") benefits. Alternatively, he asks for a remand. The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. For the reasons stated below, the decision of the Commissioner is REVERSED and REMANDED for further proceedings.

**THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity[1] and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

(3) Does the claimant's impairment meet or equal one of list of specific impairments described in 20 C.F.R. Part 404,

---

[1] Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910.

          Subpart P, Appendix 1?  If so, the claimant is found
          disabled.  If not, proceed to step four.

  (4)  Is the claimant capable of performing his past work?  If
       so, the claimant is found not disabled.  If not, proceed
       to step five.

  (5)  Is the claimant able to do any other work?  If not, the
       claimant is found disabled.  If so, the claimant is
       found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citations omitted); 20 C.F.R. §§ 404.1520(b)-(g)(1) & 416.920(b)-(g)(1).

    The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54. If, at step four, the claimant meets his burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"),[2] age, education, and work experience. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). The Commissioner may do so by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). Osenbrock v. Apfel, 240

---

[2] Residual functional capacity is "what [one] can still do despite [his] limitations" and represents an "assessment based upon all of the relevant evidence." 20 C.F.R. §§ 404.1545(a), 416.945(a).

F.3d 1157, 1162 (9th Cir. 2001). When a claimant has both exertional (strength-related) and nonexertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720. It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21.

**DISCUSSION**

**A.   The ALJ Failed To Properly Assess Plaintiff's Mental Health Impairment At Step Two of the Evaluation Process**

Plaintiff contends that the ALJ erred by finding that Plaintiff does not suffer from a severe mental impairment. (Jt. Stip. at 4). For the reasons discussed below, the Court finds that the ALJ failed to properly assess Plaintiff's mental health impairment.

By its own terms, the evaluation at step two is a **de minimis** test — intended to weed out the most minor of impairments. See Bowen v. Yuckert, 482 U.S. 137, 153-154, 107 S. Ct. 2287, 2299-2300, 96 L. Ed. 2d 119 (1987)(O'Connor, J. concurring); Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2001)(the step-two inquiry is a de minimis screening device to dispose of groundless claims)(quoting Smolen v Chater, 80 F.3d 1273, 1290 (9th Cir. 1996)).

The ALJ here applied more than a de minimis test at step two when he determined that Plaintiff's mental impairment was not severe. He improperly discounted evidence in the record that would establish a severe impairment. Finally, he failed to follow the Secretary's own regulations governing the evaluation of mental impairments, as described below.

Where there is evidence of a mental impairment that allegedly prevents the plaintiff from working, the Agency has supplemented the five-step sequential evaluation process with additional regulations.

Maier v. Comm'r of the Soc. Sec. Admin., 154 F.3d 913, 914-15 (9th Cir. 1998) (citing 20 C.F.R. § 416.920a) (per curiam). First, the ALJ must determine the presence or absence of certain medical findings relevant to the plaintiff's ability to work. 20 C.F.R. § 416.920a(b)(1). Second, when the plaintiff establishes these medical findings, the ALJ must rate the degree of functional loss resulting from the impairment by considering four areas of function: (a) activities of daily living; (b) social functioning; (c) concentration, persistence, or pace; and (d) episodes of decompensation. 20 C.F.R. § 416.920a(c)(2-4). Third, after rating the degree of loss, the ALJ must determine whether the claimant has a severe mental impairment. 20 C.F.R. § 416.920a(d). Fourth, when a mental impairment is found to be severe, the ALJ must determine if it meets or equals a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920a(d)(2). Finally, if a listing is not met, the ALJ must then assess the plaintiff's RFC, and the ALJ's decision "must incorporate the pertinent findings and conclusions" regarding he plaintiff's mental impairment, including "a specific finding as to the degree of limitation in each of the functional areas described in [§ 4163920a(c)(3)]." 20 C.F.R. § 416.920a(d)(3), (e)(2).

The regulations describe an impairment as follows:

> A physical or mental impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques[]. A physical or mental impairment must be established by medical evidence consisting of signs,

symptoms, and laboratory findings, not only by [a plaintiff's] statements of symptoms.

20 C.F.R. § 416.908; see also Ukolov v. Barnhart, 420 F.3d 1002, 1005 (9th Cir. 2005) (noting that the existence of a medically determinable physical or mental impairment may only be established with objective medical findings) (citing SSR 96-4p, 1996 WL 374187, at *1-2).

In the instant case, Plaintiff filed his application for benefits on April 7, 2004. On October 5, 2004 and on February 2, 2005, he was examined at the Mental Health Urgent Care Center at Long Beach. The report notes that Plaintiff was currently taking Prozac and Seroquel (AR 240), both medications associated with the treatment of mental health conditions. (AR 227). The clinical assessment concluded that Plaintiff suffers from a "schizoaffective disorder" and assessed Plaintiff with a GAF of 35.[3] (AR 234, 236). In another document, labeled "MHUCC Psychiatrist Intake Assessment," the doctor described Plaintiff as

---

[3] A Global Assessment of Functioning score is the clinician's judgment of the individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 32 (4th ed. 2000) (hereafter, "DSM IV"). A rating of 31-40 on the GAF scale indicates "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)." See DSM IV, at 34.

depressed for ten years. (AR 242). He reported chronic suicidal intent and that Plaintiff had attempted to kill himself. (AR 243).

In the evaluator's notes, he commented that Plaintiff was referred for an evaluation of depression. (AR 236). Further, he found that Plaintiff was unable to deny or state that he has present suicidal intent, but noted that Plaintiff then stated he has had suicidal intent for years. (Id.). These assessments show the existence of a severe mental impairment.

The ALJ did not properly credit the opinions of these treating physicians at his step two analysis:

> On October 5, 2004 and again on February 2, 2005, the claimant was seen at Telecare Mental Urgent Care (citation omitted). There were conclusions in those reports indicated that the claimant has a severe mental impairment. However, there is no clearly stated basis for such conclusions and the report is insufficiently detailed to credit. The claimant has no history of psychiatric treatment or other evidence to confirm a severe psychiatric impairment. The regulations do not permit me to make a finding of disability on the basis of the claimant's allegations of symptoms alone; there must be medical signs and laboratory findings that show the claimant has a medial impairment which could reasonably be expected to produce the symptoms alleged. (citation omitted0. In this case there are only the claimant's assertions. I cannot find a severe mental impairment on this basis.

The ALJ impermissibly combined the "disability" finding with the "step two" finding. The "step two" assessment involves a much lower standard than the actual disability finding.

Given the conclusions reached when Plaintiff was examined on October 5, 2004 and on February 2, 2005 and given that a prior doctor concluded that Plaintiff needed both Prozac and Seroquel, sufficient evidence existed in the record to conclude that Plaintiff met the de minimis test posed by step two, i.e., that he suffered from a severe mental impairment. See 20 C.F.R. § 416.920a(b)(1).

The Court further agrees with Plaintiff that, if the ALJ felt that the record was inadequate or "insufficiently detailed," he had a duty to develop the record, either by seeking more information from Plaintiff's treating doctors or by requiring Plaintiff to undergo a consultative psychiatric examination.

**B.   The ALJ Failed To Provide Clear And Convincing Reasons For Rejecting Plaintiff's Subjective Pain Testimony**

Whenever an ALJ's disbelief of a claimant's testimony is a critical factor in a decision to deny benefits, as it is here, the ALJ must make explicit credibility findings. Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990); see Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (implicit finding that claimant was not credible is insufficient). Unless there is affirmative evidence showing that the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony

must be "clear and convincing." <u>Lester</u>, 81 F.3d at 834.  As long as plaintiff offers evidence of a medical impairment that could reasonably be expected to produce pain, the ALJ may not require the degree of pain to be corroborated by objective medical evidence.  <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 346-47 (9th Cir. 1991) (en banc); <u>Smolen v. Chater</u>, 80 F.3d 1273, 1282 (9th Cir. 1996).  The ALJ may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence.  <u>Bunnell</u>, 947 F.2d at 346-47.

The sole reason that the ALJ rejected Plaintiff's testimony is that he did not have "thorough diagnostic examinations" and was treated "conservatively."  The record contradicts this finding.  (<u>See</u> AR 113-114 (describing diagnostic examinations in connection with back pain); AR 115 (x-rays); AR 122 (x-rays); AR 163 (Radiology report)).  The record further reflects that Plaintiff repeatedly sought a variety of treatment for his back pain, over several years, and was heavily medicated for his back pain, with the side effect of sleepiness.[4]

There may be alternative reasons why the ALJ could reject Plaintiff's testimony.  However, the reasons given were not clear and convincing.  Remand is required to remedy this defect.

---

[4] The Court notes that, upon remand, further consideration of Plaintiff's mental condition, back pain or other impairments may result in a modification of the RFC.  Given the evidence of these conditions in the record, the Court finds the ALJ's conclusion that Plaintiff can return to his past relevant work as a hospital central service technician is questionable.  There may, however, be other jobs that Plaintiff is capable of performing.  This issue may be further considered by the ALJ upon remand as well.

**C.   Remand is Required To Remedy Defects In The ALJ Decision**

Remand for further proceedings is appropriate where additional proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038, 121 S. Ct. 628, 148 L. Ed. 2d 537 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). Because the ALJ improperly evaluated Plaintiff's mental health impairment at step two, the case must be remanded to remedy this and other defects.

Upon remand, the ALJ must conduct the supplemental evaluation of mental impairment evidence. Normally, the ALJ must first determine the presence or absence of certain medical findings relevant to the plaintiff's ability to work. 20 C.F.R. § 416.920a(b)(1). However, this Court has determined that there is objective medical evidence that Plaintiff suffers from a mental impairment relevant to his ability to work. Thus, the ALJ need not address this question. Accordingly, the ALJ must only complete the remaining inquiries required in the supplemental evaluation of mental impairment evidence.[5]

---

[5] Specifically, the ALJ must rate the degree of functional loss resulting from the impairment by considering four areas of function: (a) activities of daily living; (b) social functioning; (c) concentration, persistence, or pace; and (d) episodes of decompensation. 20 C.F.R. § 416.920a(c)(2-4). Next, after rating the degree of loss, the ALJ must determine whether the claimant has a severe mental impairment. 20 C.F.R. § 416.920a(d). If the mental impairment is found to be severe, the ALJ must determine if it meets or equals a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920a(d)(2). Finally, if a listing is not met, the ALJ must then assess the plaintiff's RFC, and the ALJ's decision "must incorporate the pertinent findings and conclusions" regarding he plaintiff's mental impairment, including "a specific finding as to the degree of limitation in each of the functional areas described in [§ 4163920a(c)(3)]." 20 C.F.R. §

11

Plaintiff's credibility must be reconsidered in the ALJ's assessment of Plaintiff's RFC.  On remand, the parties shall not be precluded from addressing any issue not resolved by this Court.

**CONCLUSION**

Consistent with the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g),[6] IT IS ORDERED that judgment be entered REVERSING the decision of the Commissioner and REMANDING this matter for further proceedings consistent with this decision. IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: January 14, 2008.

/S/

_____
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

---

416.920a(d)(3), (e)(2).

[6] This sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."